Good morning, everyone. Welcome. Judge Barrett and I are delighted to welcome Judge Griesbach from the Eastern District of Wisconsin, who is here from Green Bay, to assist us today. Welcome. Thank you. All right. With that, we'll call our first case this morning, which is EEOC v. Costco. Mr. Pauling, whenever you're ready. May it please the Court. Good morning. My name is Gerald Pauling. I represent Costco Wholesale Corporation, the appellant and cross-appellate in this matter. This is an appeal of a jury verdict and a decision by the district court denying Costco's motion for judgment as a matter of law. The legal question here is whether the interactions of a Costco customer were so objectively severe or pervasive that they rose to the level of creating a hostile work environment for one of Costco's employees. Costco is not arguing, Your Honors, that the conduct of Thad Thompson was not odd at times or annoying or unpleasant to Ms. Suppo. But the conduct bore none of the hallmarks of conduct that this court has found to create a hostile work environment. And so to find that this conduct on the whole rose to the level of creating hundreds of thousands of dollars of liability is a significant departure from the precedent in our circuit. In determining whether a hostile work environment is objectively severe or pervasive, the court examines a number of factors. For example, the court examines the context in which the conduct occurred. Both the Seventh Circuit and the Supreme Court instruct that observation of the context of the social context of the situation is to be examined. And it's significant in this case that all of the conduct occurred in a retail environment where 3,000 to 3,500 customers pass through the doors every day. Of course, employees, regardless of the industry in which they work, should be free from harassment. But common sense tells us that contrary to the position taken by my opponent, in a retail environment it is not reasonable for employees to expect to have freedom from the unwanted attention of strangers. Well, this course of conduct by Thad Thompson, the stalker, was beyond just occasional unwelcome contact. It was stalking. Well, Your Honor, it's been described by Ms. Suppo as stalking, and I think there's a reference or ten or so references to that in the briefs. But applying a label and then repeating it doesn't magically transform the conduct into something that it wasn't. Well, a jury could reasonably construe this course of conduct on his part as stalking. He was repeatedly approaching her, engaging her in conversation about her looks and trying to date her and hiding in the store and video recording her? Your Honor, in cases where this court has found stalking behavior to create a hostile work environment, the facts in those cases are far cry from the facts in this case. For example, in the Frazier decision, the co-employee there parked outside of the plaintiff's home and watched her. He went to her workstation and called her vile names, bitch, slut, whore, told her that he was going to take her outside and kick her ass and kill her. The Frazier decision, which was cited by the EEOC, another case in which this court found stalking conduct to rise to the level of being severe, that involved a co-worker who would park his car next to the plaintiff's car. He gave her gifts and broke into her home and told her that he had to have her, that they had to be together. That's a far cry from the conduct that was involved here, where there was no threats, no engagement or interaction by this employee and this customer outside of the warehouse, where in Frazier, for example, the guy showed the plaintiff on the map where she lived. Well, those cases don't stand for the proposition that threats are necessary. Threats are not necessary, but some conduct that is severe or pervasive is necessary. But it doesn't have to be explicitly threatening. It does not have to be explicitly threatening, but it does have to be on the egregious end of that spectrum of conduct, like forcible intimate body contact. Was stalking itself necessarily pervasive? Is it in the nature of stalking to be pervasive? Your Honor, stalking behavior clearly can create a hostile work environment, but it requires an examination of the conduct to determine that the conduct was severe, within the meaning of the court's decisions, or pervasive within the meaning of the court's decisions. So stalking isn't necessarily pervasive? It's not necessarily pervasive. It may or may not be pervasive. It may or may not be severe. But in our case, the behavior is, there's no conduct or interaction by these folks outside of the Costco warehouse. Well, she did get a no-contact order. She got a no-contact order, Your Honor, but that's not a finding of anything. It's not a finding that Mr. Thompson was engaged in stalking. It's a prohibition and directive to him as to what conduct he can and cannot engage in, in terms of staying away from her and not contacting her. But there isn't anything in the record that suggests that the no-contact order was pursuant to a finding by a judge that Mr. Thompson was, in fact, engaged in stalking. And even if there was, there isn't anything that we know about the evidence that was presented to that judge or whether that standard is the same for establishing harassment versus qualifying for a no-contact or no-stalking order. Stalking is a little bit of a loaded term. Yes, it is, Your Honor. What is the conduct here? What are the specifics that you think should control whether or not this is stalking or not stalking? How would you define it? Absolutely, Your Honor. Well, first, stalking would involve some kind of interaction outside of the warehouse, so that it's not the only interaction isn't in a bustling, well-lit store. Why should that be the rule? Well, that per se should not be a rule, Your Honor. I was trying to describe the kinds of circumstances that I think are absent where stalking, a threat to kick someone's ass and kill them. You just acknowledged that that's not necessary for liability. Stalking behavior. And you just also acknowledged that it's not necessary for liability that there be some stalking behavior outside the workplace. There doesn't have to be stalking behavior at all in order for a hostile work environment to hold. This court has found a hostile work environment in cases that didn't involve stalking, but the question is, does the conduct, does it rise to the level of creating an abusive working environment? And what we're saying here is that in a case where if you look at the totality of the circumstances, there are no threats. And not only are there no threats, there are no lewd or denigrating or humiliating anti-gender-based epithets or slurs. You tried to articulate and present evidence as to the number of times there was a confrontation or there was an interaction between Ms. Supple and Mr. Thompson, and you came up with a percentage of 6.5 percent of the time, I think, if I recall correctly, that she was working. Yes, Your Honor. Based upon an analysis and comparison of her shifts and his use of his card. There was evidence, though, also at least an argument that he was there on dates when he would not have shown up on his membership card. How do you, I mean, wasn't there a basis here for a jury to conclude that, in fact, it was more pervasive than the 6.5 percent of the time she went to work? The jury could have reached that conclusion, Your Honor, but set aside that. Set it to the side. Okay. By Ms. Supple's own account and Mr. Thompson's account, months went by where the two of them had no interactions at all. Set aside the shopping history and her work schedule, which we believe are the best evidence of when they were in the store together. But set it off to the side. Both of them, and Ms. Supple, for example, when she reported these behaviors to the police or to the EEOC, her own notes indicate that they weren't having daily or weekly or even monthly contact. And Mr. Thompson's testimony at trial bore out the same thing. And so when someone is not having daily or weekly or monthly conduct, when they're saying months went by, several months went by when they didn't have any interaction, that does not reach the level of being a pervasive work environment. In this court's decisions that involve a pervasive work environment, the court speaks to daily or near daily interactions. In Hall, for example, it talks about the harassment being the daily experience of the plaintiff. That's not what occurred here by either Mr. Thompson's account or Ms. Supple's account. And when that's combined with the fact that it's not pervasive, when combined to the fact that it doesn't reach the level or bear any of the hallmarks of the kind of conduct that the court has found to be severe, then it fails us to both pervasiveness and severity. And so even setting aside the dispute over the shop history and the work schedule, there still isn't evidence that this was pervasive conduct by Mr. Thompson directed at Ms. Supple. It's not like he was an employee that she worked with side by side every day and had to deal with him every day. It's a different situation than that. So in addition to the context and the court's examination of the context and the pervasiveness, we believe that this conduct, it's not severe. It doesn't show pervasiveness, certainly not as the court has defined those standards to be. And for that reason, we believe that the court should reverse the jury award, reverse the jury award and set it aside. It appears that much of your argument and evidence in front of the jury bore on Ms. Supple's susceptibility or her sensitive, her mental health history, frankly. How did that enter in and why do you think that was relevant? Well, Your Honor, because the decisions of the court require an examination of the circumstances from the standpoint of an objective person, not a hypersensitive person, and that was the point that was made in this court's prior decision. And the evidence at trial, both from Ms. Supple's own medical providers as well as the expert, Dr. Gold, who testified indicated that Ms. Supple is susceptible to viewing the world through the lens of someone with a particular condition called borderline personality disorder. But all of that was in front of the jury, and the jury could factor that in as it saw fit and determine that this conduct was objectively pervasive and severe. That's correct, Your Honor, and we're here because sometimes juries don't get it right. And we realize that this court doesn't take jury verdicts lightly. We understand that it doesn't set them aside routinely or regularly, but it does where a jury's decision is contrary to the law and not consistent with the law in our circuit, then this court has set those jury verdicts aside. And we believe that that's the situation that holds here. This court and the Supreme Court have consistently stated that the statute, Title VII, is not a general civility code, that it isn't intended to reach conduct that is merely annoying or offending, that it has to be conduct that rises to the level of being severe. And we believe that that standard was not met in this particular case. Turning for a moment to the EEOC's cross appeal, Your Honors, we believe that the cross appeal should be denied basically for three reasons. First, the issue of lost pay, Your Honors, was part of the EEOC's constructive discharge claims, which was pled in their complaint and pressed through litigation, and it was dismissed by Judge Castillo at summary judgment. The dismissal of that claim was not appealed. The issue of lost pay was gone from this case when Judge Castillo denied the EEOC's motion or granted our motion for summary judgment. And now the EEOC has repackaged their lost pay claim as a motion for back pay and are trying to backdoor the dismissal of the claim, of the only discharge theory they pressed in the litigation. It is precisely what this court refused to allow in Hertzberg. You had a trial. There was no unlawful discharge proved at that trial. The plaintiff then tried to file in the style of a motion for back pay an attempt to get the equitable relief. This court said, no, you can't do that. Hertzberg didn't have anything to do with the claim for back pay for unpaid medical leave necessitated by the offensive and pervasive conduct. It did not involve a medical leave. And that's the more limited scope of the EEOC's back pay request here. The agency is not requesting a back pay award for constructive discharge. The agency is asking for a limited back pay award for the period of time that Suppo spent on unpaid medical leave. With all due respect, I don't believe that's the case, Your Honor. The EEOC, they filed the complaint. They alleged that all of the- That was the original claim, but that's gone with the summary judgment not before us. What's before us is the district court's denial of the more limited back pay remedy, which is an equitable remedy and remains viable to the extent that Townsend permits it. To the extent that Townsend permits it. But, Your Honor, they're asserting lost pay from the period she goes out on leave to the period she's able to go back to work in December of 2014. She's terminated in November of 2012. And so the EEOC is seeking back pay beyond the period that she was on leave. They want that plus the back pay, unless I'm misunderstanding their claim. They want the period of the leave and the period after the termination. We say Hertzberg stands very clearly for the proposition that unless you prove an unlawful discharge, you're not entitled to back pay for that period following- For a constructive discharge. But you may be entitled to a more limited back pay award for time spent on unpaid medical leave as a consequence of the conduct in the case. And that's a more limited form, and maybe we need a clarification about the scope of the request. At the most, Your Honor, under Townsend, at the most, Townsend conceptually would allow Ms. Suppo back pay from the period that she went on leave to the period that she's terminated in November of 2012. The problem with that period is they have a causation problem. There isn't evidence sufficient to determine that Costco caused the lost pay that Ms. Suppo suffered from September of 2011 to the time that she was terminated in November of 2012. Well, she was on unpaid medical leave as a consequence of Thad Thompson's behavior.  The jury made no determination as to the cause of Ms. Suppo's inability to return to work. They made a determination that she was entitled to compensatory damages resulting from the harassment. But the jury was not presented with any evidence, and in fact was instructed not to consider any evidence regarding Ms. Suppo's termination because that was out of the case. And they were told not to evaluate, not to consider any evidence relative to her termination in evaluating the case at all. And so the causation problem is that Ms. Suppo's and her own medical providers testified that there were any number of causes for her inability to return to work that had nothing to do with Costco. And so for the period that they could conceptually recover relief for Ms. Suppo, they have a causation problem. And for the period after her termination, they have a Hertzberg problem because Hertzberg very clearly says in the absence of proof of an unlawful discharge, which there is no proof of an unlawful discharge here, the remedy of back pay is not available to a claimant like Ms. Suppo. To the extent that there's a viable claim for the more limited back pay award, why would that question be submitted to the jury? That's an equitable remedy for the court. The causation question would be submitted to the jury. The amount of back pay would be an issue for the court. As an advisory, requesting an advisory verdict? As an advisory. But whether something was the cause is a fact question. And in this case, that question wasn't submitted to the jury. The fact question of whether Costco was the cause was not a question. And I believe the EEOC concedes this in their reply brief. There was no determination of causation by the jury or by the district court. What was the termination, wrongful termination claim that Judge Castillo dismissed? What was the date of the alleged constructive discharge? Was it the day she went out on medical leave? Yes. So according to their summary judgment. So he found that the medical leave or the leave, her absence from work after that time was not caused by, I mean, was that his summary judgment ruling? Well, what he found was, and they were arguing that from the time she stopped coming back to work until December of 2014, I mean, the time she was terminated, November 2012, they were calling that whole thing a constructive discharge for which they sought back pay. He denied the whole claim. He said, you know, their constructive discharge. Because once she went on leave, she never returned, right? That's correct. Okay. That's correct, John. And EEOC argued that that was the constructive discharge date. Yes. And he rejected that. Yes. In their summary judgment, it's very clear. In their summary judgment papers, that's what they argued. And he specifically rejected that. And now they're trying to take that same lost pay, style it as a motion for back pay and recover it in that way. I see that my time has expired. Thank you. Thank you, Your Honor. Ms. King. May it please the Court, Ann King on behalf of Appalee Cross-Appellant Equal Employment Opportunity Commission. The EEOC asked this court to affirm the district court's denial of Costco's Rule 50B motion for judgment as a matter of law and to reverse the order holding that the EEOC could not, as a matter of law, pursue back pay for charging party Dawn Seppo. After hearing five days of testimony, the jury found Costco liable under Title VII after a Costco customer, Thad Thompson, subjected Ms. Seppo to objectively hostile harassment based on her sex. The district court declined to set aside that verdict and denied Costco's Rule 50B motion. This court should affirm. The standard is that a Rule 50B motion should be denied unless no rational jury could have concluded that Seppo experienced a hostile work environment. In employment discrimination cases like this one, this court has emphasized that it's particularly important to avoid supplanting the jury's view of witness credibility and the weight of the evidence and the district court's decision not to set aside the verdict because the nature of evidence in employment discrimination cases is that circumstantial evidence is often important and credibility is essential. Here, the jury heard trial testimony and rationally found that Thompson's harassment of Seppo was objectively hostile because a reasonable person in Ms. Seppo's position could have found it severe or pervasive and it could have altered Seppo's work conditions. A hostile work environment occurs along a continuum, and there's an inverse relationship between severity and pervasiveness. So as events are more severe, they don't need to be quite as frequent, and the opposite is true as well. Counsel, can I ask you a question about frequency? Yes, Your Honor. Crediting all, you know, construing every inference in favor of Ms. Seppo here, would you concede that the pervasiveness of this behavior is short of what our other cases have held to be a hostile work environment? No, Your Honor. I think that there are a few cases that are very close in terms of the pervasiveness in this case. Counsel for Costco mentioned Hall v. City of Chicago, and we think that case is actually very helpful here. That actually involved one incident of physical contact, bumping by a supervisor in a few attempts to bump into the employee. There's nothing sexual in that case, and as in that case, this court emphasized that it was important to look at the totality and that the jury could infer an effort to ostracize the employee. And here, similarly, a jury could infer that Thompson's behavior was not innocuous from the totality of the circumstances. But in that case, she was ostracized and excluded from work meetings and that sort of thing, correct? That's correct, Your Honor. And, you know, this court commented there that there were alternative explanations possible for those exclusions. For example, the plaintiff alleged she was given busy work, but this court pointed out that sometimes work consists of busy work. Here, it's not quite so ambiguous. Thompson made advances towards Suppo. He, for example, videotaped her from afar. There isn't an innocuous explanation for that conduct versus in Hall. What do you think about Costco's pointing out that there were months that went by even without any contact, even by Suppo's own testimony? Does that reduce the claim of pervasiveness? Well, I don't think it does in this case because we can test that Suppo's testimony established that. Now, they point to Thompson's testimony that months passed, but the jury could have chosen to disbelieve him. I think what they're referring to is this is on page 21, note 15 of their response reply brief, and they note that there's a police report in September 2011 which says that the officer who wrote this says Ms. Suppo noted that she hadn't seen him in a few months. But the thing is, that is actually hearsay because Ms. Suppo didn't write that herself. And at trial, the district court directed Costco's counsel not to question Ms. Suppo about the truth of that report because it was hearsay, and she had actually said at her deposition that she found that report about 70 percent inaccurate. So I don't think that can be taken as establishing that Ms. Suppo believed they hadn't seen each other for months. So at trial, I know she said she used the word constantly. Yes. But at trial, if the months-long thing that was noted in the police report, perhaps inaccurately, didn't capture her testimony or her sense of how often she actually encountered Thompson, what did she say at trial besides using the word constant? Well, she said, for example, that he constantly asked her where she was from. He asked her age over and over, although she told him she wouldn't respond. He still asked her. He tried to give her his number multiple times. But I'm talking about how many days. How many days? Yes. Was she saying he was a daily shopper? Is he saying when he was in the store, he was constantly badgering me? That could mean different. She used language such as multiple times, constant questions to indicate that. Now, she didn't always remember exact details about when some of these interactions happened, although she did testify. I think Costco counts it up, and I'm looking at page 22 of their response reply brief. They acknowledge 19 incidents that she described in detail. But other than that, the testimony about other frequent contact, even though it was less specific, the jury still could have determined that that established a pervasive environment. As this court pointed out in Day v. Cole Construction, which had a similar pattern, I believe the employee there remembered five incidents in detail and recalled other frequent contact. The court said that she wasn't required to recall with specificity all of those other incidents to establish a pervasive environment. And this course of conduct went on for about a year, a little over a year, before Costco removed Thompson's membership or revoked his membership or told him to shop at a different store? Right. Well, his membership wasn't revoked for some time, so this started in around June 2010 when she first started working there as a full-time, as a permanent employee. I'm sorry, she was actually part-time, which is also, I think, relevant to the pervasiveness inquiry because what really matters is not so much did they see each other every day, but since she's a part-time employee, what matters is was his behavior altering her work conditions when she was at the store? But just to finish that prior thought, it started around June 2010, and then the videotaping incident is in September 2011. So that's about 15 months. His membership isn't revoked until February 2012, which is after he encountered her at the Mattawa Costco and screamed profanity at her and walked after her, even though there was a stocking-no-contact order. How many times did he videotape her? That happened on one occasion. And that's when they revoked his membership or told him not to come to the one where she worked anymore? They did not do that right away. But isn't that what precipitated the direction that they told him he cannot come to that store anymore? That's kind of how it played out. She went on medical leave after the videotaping incident, and she obtained the stocking-no-contact order. And then, not immediately, but sometime after that, a couple months after, I believe it was in November, I'm sorry, it was maybe October, they directed him to shop at the Mattawa store, and they told her about that in November. And I could just add one more thing about the stocking-no-contact order. So Council for Costco said that there was no finding regarding that stocking had occurred when that order was issued. But actually, the Illinois law that authorizes the issuance of such orders, and that's 740 ILCS 21-80A, specifies that an order issues if there has been a finding of stocking, which makes sense because the law is restricting the respondent's movement, so there has to be a finding of stocking. But there's no hearing, right? There is a hearing. There is a hearing, and Thompson was permitted to testify? Yes, so he appeared at the hearing. She obtained a temporary order in September 2011, so that's an ex parte proceeding. But then she, after a hearing, I believe later that month or the next month, obtained a one-year stocking-no-contact order, and he was given notice and appeared at the hearing. But by that time, that was after the videotape that she got the initial appearance? And then was the final hearing after the incident that led to his removal as a member? So the final hearing was before the Mattawa store incident that led to his removal, and he actually was in violation of the permanent order at that time because he walked after her and was required to stay a certain distance away from her. And, in fact, wasn't it after she got the order that he was told not to come to the store where she was employed anymore? I know that she had the temporary order, and then in terms of exactly when she received the permanent order and when Costco asked him to go to the Mattawa store, I'm not certain of the exact order. It was around the same time. But Costco knew that there was a temporary order and that she had gone to the police again at that stage. Counsel, would it be your position that a finding of stocking and the ability to secure either a temporary or permanent no-contact order because of stocking behavior would necessarily establish a pervasive harassment in a hostile work environment? Well, I don't think I would say that that's per se true because, obviously, there is a different standard under Illinois law versus Title VII. But it certainly, in this case, we do have the facts that establish a pervasive or severe environment. And, again, it's a continuum, so it doesn't have to be purely pervasive or purely severe as long as the environment is objectively hostile and falls on that continuum, and that's enough. Because you can obtain, under Illinois law, you can establish stocking and get the no-contact order with just one or two incidents, right, that would show stocking behavior? Yes, I believe that's correct, Your Honor. I believe that's right. So I think that's true that it wouldn't necessarily be a per se violation of Title VII. But, again, our position is that, in this case, there was sufficient pervasiveness and also that his conduct was quite serious. Again, Costco seeks to downplay the serious nature of Thompson's conduct, I think pointing out that, as Costco's counsel said, that there was no touching of intimate body parts. But as this court commented in Worth, touching of intimate body parts is one of the more severe types of harassment. So that, of course, acknowledges that harassment can occur even if the touching is not of intimate body parts. And I'd just like to emphasize that Thompson was a stranger to Ms. Seppo, and yet he engaged in physical contact without her consent. He touched her face and her arm in an intimate manner while commenting on her body. He deliberately bumped her four times with his body and with his cart. And that goes beyond the contact that an employee would reasonably expect from a customer who was a stranger to her. I don't think that our position here requires a conclusion that any type of customer harassment is heightened. It's important to look at the details here. Again, that he touched her without her permission, without her consent, after she'd rebuffed him, and even after she had gone to the police and complained about his conduct to Costco management. That, I think, really sets apart his behavior as particularly persistent and particularly incorrigible, which could make it more menacing to a reasonable person in Ms. Seppo's position. If I could just add one more point on pervasiveness, I just wanted to highlight the idea that they didn't encounter each other that often. One of Costco's managers, Greg West, and we explained this in our brief at our principal response brief at 13. He testified that Thompson told him that he, this is after she's complained to management and the police, that he bumped into Seppo around the store and that he may appear to stare at Seppo when he sees her in the store. And that is another piece of testimony other than Seppo's own testimony that goes to pervasiveness. There are no further questions on Costco's appeal. I'd just like to add something on our appeal on the back pay issue. In this case, our view is that Towson versus Indiana University authorizes back pay in a situation like this one, where an employee is forced to take leave due to psychological distress stemming from an unlawful employment action. And again, we are seeking $46,000 of back pay in this case. I just wanted to note that in the proposed final pretrial order, which is Record 194, this is at page 42. This is a statement of damages that says the EEOC is seeking back pay damages from September 1, 2011, up until December 31, 2014 in around $46,000 to be determined by the court. So this is not a new claim, a new request that the EEOC advanced only after trial. It's memorialized in the pretrial order. But that period encompasses a long period of time after she was, her employment was terminated. Yes, Your Honor. And what's the legal justification for that? Townsend doesn't support that. Well, and to clarify, to respond to some of your questions to counsel for Costco, I can clarify the scope of what we think would be the back pay range. So the period that's clearly authorized by Townsend is that period after Ms. Supple goes on medical leave, and it's our position that there's direct causation. Now, she's terminated about a year after that, but that is because Costco's policy provides that she would be terminated after more than 12 months of medical leave. And so there's still a causal link. It's still a Townsend situation. Well, there might be a causal link, but there's no legal justification for it without a constructive discharge. After her termination? That's Hertzberg. We have to harmonize Townsend and Hertzberg. If you're seeking a back pay award for that entire time period, you've got to prove a constructive discharge, and that claim was gone at summary judgment, as I understand it. So what you're limited to is a back pay award for the period of time she was on medical leave while she was still in Costco's employ, provided there's causation. The causation question was not submitted to the jury. I'm not sure it needs to be since that's an equitable remedy. Maybe you can address that question. Exactly. And the pretrial order, again, specifies that back pay would be determined by the court because, as you say, Judge Sykes, it's an equitable remedy. But here, the jury did make some findings in its verdict that are relevant, even though, as we explain in our brief, we really are only asking this court to decide the threshold question. Can EEOC pursue back pay not to determine whether there's causation? Because that seems like a question for remand. But as to the jury's verdict, a few things. The jury found Costco was liable for the hostile work environment, so that goes to causation. They found Costco responsible for emotional distress damages stemming from the hostile work environment. And they found that her distress, Ms. Seppo's distress, was significant and that her medical treatment was justified. They ordered $200,000 in emotional distress and $50,000 in medical treatment. Now, the district court would make its own determination, but as this court emphasized in Pals v. Shupple, the district court should take that into account when making the back pay determination. I think that medical treatment award is important because it shows that the jury thought that Ms. Seppo was actually incapacitated during a certain period of time, and maybe there is some debate over how long was that period of time, and the two parties disagree as to the question about whether there were other factors that might have played a causal role. Isn't that exactly what you were seeking in your constructive discharge claim, though, the same damages? Well, we did seek. And why didn't you appeal the trial judge's denial or granting of summary judgment on the constructive discharge claim if those are the damages that were based upon that? Well, that's true that we would have sought, although we didn't reach that stage, but we would have likely sought back pay on the constructive discharge claim. I don't think this is a way to get around that ruling because Townsend and Hertzberg stand for the idea that there are different paths to obtain back pay, and we're just at this point arguing that the Townsend path is appropriate. And thank you very much, Your Honors. All right, thank you. Mr. Pauling, rebuttal. Thank you, Your Honors. Turning first to the EEOC's cross-appeal, they're arguing but-for causation. That's what they're arguing, but-for causation. She was on a leave and she wound up getting terminated. It's but-for causation. It's exactly the theory of causation this Court rejected in Townsend. There is no question that they are lost pay. The only discharge theory they pressed was constructive discharge. It was dismissed at summary judgment, and they did not appeal the denial of that order. I'd also note that the pretrial order, I'd encourage the Court to look at the uncontested-ish statements of law, the stipulated uncontested issues of fact and law, and the contested issues of fact and law. There's nothing in there about back pay or in the contested issues of fact and law. There's nothing about the back pay. In the uncontested, there was an acknowledgment of the dismissal of the termination claim. Right, because those issues were not going to be tried to the jury. Exactly. That doesn't eliminate the Townsend-based back pay award for the more limited duration. Except to the extent that they're still seeking to get damages beyond the absence of a parole order. Right, I'm focusing on the more limited duration, the time period from when she went out on unpaid leave to the time period that Costco terminated her employment because she had exhausted her unpaid leave. Correct. That more limited time period. Do we need any further fact-finding on that? The judge basically denied the back pay claim based on Hertzberg without further analysis of how to harmonize Hertzberg and Townsend. And perhaps the district court needs to determine whether or not it has. But I was there for the trial, Your Honor, and there wasn't any evidence about Costco being the cause of the lost pay. And so for us to ask the district court to determine that now, that seems to be problematic. Well, everyone was laboring under the impression that it was kind of an all-or-nothing proposition, as opposed to this more limited available remedy. And the amended statute does preserve the equitable remedies that existed before the amendments, the 91 amendments. I agree with that, Your Honor. And then that is the way you harmonize Hertzberg and Townsend. One can apply while the person is still employed. One forecloses any back pay after a person doesn't prove an unlawful discharge. I just would ask the court to look at its decisions on our appeal and the issues of pervasiveness and severity. This conduct by Mr. Thompson, asking Ms. Supple her name, asking her age, it simply doesn't compare. Even bumping into her, she says constantly. But when you look at the testimony, she says constantly trying to give me her business card. That's one or three times. Well, that is not evidence of constant behavior, and there isn't other evidence of pervasiveness in the case. Mr. Pauling, you are going to have to wrap up because your time has expired. Thank you, Your Honor. All right. Thank you. Our thanks to both counsel. The case is taken under advisement.